### DARLING v. HUNT.

(Supreme Court, Appellate Division, Fourth Department. December 6, 1899.)

1. **LIVERY-STABLE KEEPER—LIEN—WAIVER.**
    Where a livery-stable keeper accepted a certain cash payment made by plaintiff, and also a note secured by a chattel mortgage on plaintiff's horse and carriage, given to secure the balance of the debt for keeping the same, and consented that plaintiff should have possession thereof, his lien on the property is lost.

2. **APPEAL—FINDING OF REFEREE—CONFLICTING EVIDENCE.**
    The finding of a referee on conflicting testimony will not be disturbed.

Appeal from judgment on report of referee.

Action by Ella Darling against G. Everett Hunt to recover possession of a certain horse and carriage alleged to be the property of plaintiff. From a judgment entered on the report of a referee in favor of plaintiff, defendant appeals. Affirmed.

Argued before HARDIN, P. J., and ADAMS, McLENNAN, SPRING, and SMITH, JJ.

A. C. Pickard, for appellant.

A. Frank Jenks and N. H. Hill, for respondent.

HARDIN, P. J. On the 27th day of April, 1896, the plaintiff commenced this action to recover possession of a bay mare and one top single carriage, and in her complaint alleged that she was the lawful owner and possessed of the property, and that on the 25th day of April, 1896, the defendant wrongfully took the property from the possession of the plaintiff and detained the same. The defendant, in his answer, denied the wrongful taking of the property mentioned in the complaint, and alleged "that, at the time he took said property into his possession, he held the horse mentioned in the plaintiff's complaint under a livery-stable keeper's lien for the keeping of the horse mentioned in plaintiff's complaint, the said plaintiff owing this defendant for keeping the said horse the sum of $62." The defendant, for a further defense, alleged that he "held a chattel mortgage upon said property, duly executed by this plaintiff, for the sum of $62, which chattel mortgage gave this defendant the right at any time to take possession of said property; that said property was taken by virtue of said chattel mortgage, as this defendant had a right to do." The referee found that on the 20th day of April, 1896, the plaintiff was the owner of the mare and carriage mentioned in the complaint; and he also found that "on the 20th day of April, 1896, the plaintiff, for value received, executed and delivered her promissory note, payable three months thereafter, and, to secure the payment thereof, she duly executed and delivered to the defendant a chattel mortgage upon

said mare and carriage for $62.82." The referee found that the chattel mortgage contained the following language: "But, in case of nonpayment of the said debt and interest at the time above mentioned, then the said mortgagee, or his representatives or assigns, shall have full power to enter upon the premises of the said party of the first part, or any other place or places where the goods and chattels aforesaid may be, to take possession of the said property, to sell the same at public or private sale, and the avails (after deducting all expenses of the sale and keeping of the said property) to apply in payment of the above debt; and, in case the said G. Everett Hunt shall at any time deem it unsafe, it shall be lawful for him to take possession of said property, and to sell the same at public or private sale, previous to the time mentioned for the payment of said debt." The referee also finds that "on the 24th day of April, 1895, the defendant wrongfully took said mare and carriage from the possession of the plaintiff herein, and unjustly detained the same." The referee further found "that, at the time defendant took possession thereof as aforesaid, the mortgage debt was not due, and the defendant did not in good faith deem himself unsafe, but took possession thereof for the purpose of enforcing the collection of said debt before maturity." The evidence indicates that on the 24th day of April, 1896, the defendant obtained a copy of the chattel mortgage, placed the same in the hands of one Simonds, a constable of the town of Ellicott, and by the direction of the defendant he took the horse and carriage from the possession of the plaintiff. By the evidence, it appears that the husband of the plaintiff, prior to the 20th of April, had executed a chattel mortgage upon the property which contained some misrepresentation as to the ownership, and that the defendant was about to institute proceedings against the husband on account of the misrepresentations contained in the chattel mortgage executed by the plaintiff's husband. On the 20th day of April, 1896, the plaintiff and the defendant met in the office of Davis, a justice of the peace, and held a conversation in respect to the alleged livery-stable keeper's lien claimed by the defendant upon the horse. That conversation resulted in an arrangement, in the justice's office, in which the plaintiff agreed to take up the mortgage made by her husband by paying $50 cash, and giving a mortgage executed by her for $62. She thereby settled the indebtedness that had arisen in favor of the defendant. In accordance with that settlement, the plaintiff was to have possession of the property, and, in the chattel mortgage executed by her in consummation of the settlement, terms were inserted which indicated that she was to have possession of the property. The evidence indicates that whatever right the defendant had theretofore to assert that there was a lien for the keeping of the property was waived, and in the place thereof he consented to take a three-months note made by the plaintiff, secured by her chattel mortgage on the property The defendant thereafter did not, by giving notice to the plaintiff or by any other act, assert his right to enforce a lien under the statute. On the contrary, he contented himself with taking the note and the mortgage col-

lateral thereto, giving the plaintiff time, and consented that she have possession of the property, and in pursuance of such consent she took possession of the property, and removed the same to her premises. It was therefore out of the power of the defendant to assert a livery-stable keeper's lien upon the plaintiff's property after the transaction was closed in Justice Davis' office. When the defendant accepted, in the course of the settlement, the $50 paid by the plaintiff, and the note and the mortgage given to secure the balance of the indebtedness held by him, his lien upon the property was gone.

Again, when the defendant sought to take the mortgaged property from the plaintiff, he obtained a copy of the mortgage, and put it in the hands of a constable, to use as the basis for taking possession of the property from the plaintiff. Thus, we see a practical construction of the transaction had at the time of the settlement made by the defendant. In the circumstances of the case as shown by the evidence, we think the defendant, at the time of seizing the property from the plaintiff, was not in a position to assert his livery-stable keeper's lien which may have existed theretofore. Besides, the defendant did not, by any request made at the trial, ask the referee to find that any such lien existed. In the referee's report nothing is said about such a lien.

2. The referee has found that the defendant had a chattel mortgage, and under it the defendant claimed to take the property because he deemed himself insecure, and he sought to justify the taking from the plaintiff of the property in virtue of the provisions of the chattel mortgage. As we have seen, the mortgage contained a statement that it was given as collateral to a note to run three months from April 20th, and that the mortgagee had power to foreclose and take possession of the property from the plaintiff if the note was not paid at maturity. The mortgage also provided that, "in case the said G. Everett Hunt shall at any time deem it unsafe, it shall be lawful for him to take possession of said property." After hearing all the evidence offered by the parties upon the trial, the learned referee has found against the defendant, and in his fifth finding he states, viz.: "That, at the time defendant took possession thereof as aforesaid, the mortgage debt was not due, and the defendant did not in good faith deem himself unsafe, but took possession thereof for the purpose of enforcing the collection of said debt before maturity." The finding is upon testimony given by the parties as witnesses, and the faith to be given to it, as well as the construction of the evidence, were for the referee to determine. We see no occasion to disturb the finding of fact made by the learned referee. Roosa v. Smith, 17 Hun, 138; Baird v. Mayor, etc., 96 N. Y. 566. As already stated, it appears the mortgage was dated the 20th of April, to secure a note at three months, and the defendant suddenly changed his mind after receiving the mortgage, and instructed a constable to take the property on the 24th of April from the possession of the plaintiff. We think the referee was warranted in finding, as a conclusion of law, that the plaintiff was entitled to recover the possession of the mare and

carriage mentioned in her complaint, "or, if the possession thereof is not delivered to the plaintiff, that the plaintiff is entitled to recover of the defendant $100, the value thereof." We are therefore of the opinion that the judgment entered upon the report of the learned referee should be sustained.

Judgment affirmed, with costs. All concur.